IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LARRY LYNN KENNAMORE,          §
            Petitioner,          §
                         §
v.          §          CIVIL ACTION NO. H-04-309
                         §
NATHANIEL QUARTERMAN,          §
Director, Texas Department of          §
Criminal Justice, Correctional          §
Institutions Division,          §
            Respondent.          §

**MEMORANDUM AND ORDER GRANTING
RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court[1] in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's

Motion for Summary Judgment (Document No. 21) against Petitioner's Federal Application for Writ

of Habeas Corpus (Document No. 4).  Having considered the motion, the claims raised by Petitioner

in his §2254 Application (Document No. 4), the summary judgment evidence, and the applicable law,

the Court ORDERS, for the reasons set forth below, that Respondent's Motion for Summary

Judgment (Document No. 21) is GRANTED, that Petitioner's Federal Application for Writ of Habeas

Corpus (Document No. 4) is DENIED, and this case is DISMISSED WITH PREJUDICE.

I.          **Introduction and Procedural History**

Larry Lynn Kennamore ("Kennamore") is currently incarcerated in the Texas Department of

Criminal Justice, Correctional Institutions Division, as a result of a 2001 felony conviction in the 177th

---

[1]On November 9, 2004, pursuant to the parties' consent, this case was transferred to the
undersigned Magistrate Judge for all further proceedings.  *See* Document No. 14.

District Court of Harris County, Texas, for aggravated sexual assault, Cause No. 873556. Kennamore was charged by indictment with that offense on September 7, 2000, was found guilty by a jury on April 11, 2001, and was sentenced to thirty-five (35) years incarceration.  His conviction was affirmed on appeal on May 31, 2002.  *Kennamore v. State*, No. 01-01-00699-CR, slip op. Kennamore's petition for discretionary review was refused on October 23, 2002.

On September 2, 2003, Kennamore filed a state application for writ of habeas corpus.  That application was denied by the Texas Court of Criminal Appeals on December 10, 2003, on the findings of the state trial court without a hearing.  *Ex parte Kennamore*, Application No. WR-57,259-01.  This § 2254 proceeding, filed by Kennamore on or about February 12, 2004, followed.  Respondent has filed a Motion for Summary Judgment (Document No. 21), to which Kennamore has not filed a response in opposition.  This § 2254 proceeding is therefore ripe for ruling.

## II.    Factual Background

The factual background, as set forth by the Texas Court of Appeals in its written opinion affirming Kennamore's conviction, is as follows:

> On June 16, 2000, complainant returned home to her apartment complex around 11:20 p.m.  Complainant unloaded her books, purse, and bag out of the car and took the items into her apartment.  Complainant then went back to her car to retrieve her keyboard.  As complainant was taking the keyboard from the backseat, appellant walked up to complainant and pressed up against her body.  Appellant put a pocket knife up to complainant's neck and threatened, "Be careful.  I'm going to cut you if you don't cooperate."  Appellant then took complainant by the arm, still at knife point, to the side of the utility building in the apartment complex.  Appellant told complainant, "We are just going to go over and have some fun."
> Once behind the utility building, appellant ordered complainant, at knife point, to take off all her clothes.  Complainant complied with appellant's demands, and appellant yelled at her to hurry up.  Once complainant was naked, appellant made her lie, face up, on the ground.  Appellant repeatedly told complainant not to look at him

or he would cut her.

Appellant kissed complainant and then placed his penis in complainant's vagina for about 15 minutes.  Next, appellant made complainant perform oral sex.  After having her perform oral sex, appellant got back on top of complainant.

Dennis Stygstra, another tenant at the apartment complex, was outside when his dog noticed complainant and appellant.  Stygstra followed his dog and saw appellant on top of complainant.  Believing that they were vagrants, Stygstra suggested that they get a room, and he asked if appellant if he lived in the complex.  Appellant responded that he did live there.  Complainant did not say anything because she was scared and very tired.  Stygstra picked up his dog and returned to his apartment.  Stygstra told his roommate what he had seen and called 911.

After Stygstra returned to his apartment, appellant ordered complainant up and pushed her behind some bushes near her car.  Complainant was naked and holding her clothes to her chest.  Once behind the bushes, appellant ordered complainant back down on the ground, and just as he was about to penetrate her again, Stygstra and his roommate had come back down to see what was happening.  Stygstra's roommate yelled "What are you doing?"  The police arrived shortly thereafter, and appellant, realizing that the police had arrived, ran off.  Stygstra pursued appellant, but appellant got away.

Complainant, who was still naked, got up and ran and hid under a patio table for several minutes.  Complainant eventually ran into her apartment, and the police knocked on her door.  The police then learned that complainant had been raped and called an ambulance.  On June, 23, 2000, complainant picked appellant's picture from a photo spread.

**Extraneous Offense**

On June 23, 2000, M.H. got into a fight with her boyfriend and went to call her friend from a pay phone.  M.H. lived at the same apartment complex as complainant, and M.H. walked one block over to the nearby Stop N Go.  Appellant, who had been sitting on the curb by the pay phones, approached M.H. and the two began to talk.  M.H. knew appellant because she had seen him hanging out by the Stop N Go several times before.

M.H. went to use the pay phone, and appellant then tripped or hit M.H. and dragged her behind the dumpster at the Stop N Go.  Appellant then struck M.H. on her left cheek, and appellant told M.H. to take off her shirt.  Appellant removed M.H.'s boxer shorts.  M.H. tried to reason with appellant, and she told him not to do it.  Appellant repeatedly told M.H. not to look at him and to be quiet.  Appellant told M.H. that, if she pleasured him, she would not get hurt.  Appellant then kissed M.H., touched her breasts and all over her body, and he tried to touch her vagina.  Appellant let M.H. put her shirt back on, but she did not know why.  At this point, M.H. put her shirt back on and ran away.  M.H. ran to a nearby carwash where a man was washing his tow truck.  M.H. got into the truck and was screaming.  The driver of the truck

gave M.H. a pair of jeans to wear, and he called the police.

The police arrived at the scene, and M.H. gave a description of appellant. The police immediately recognized the description of appellant as the same man they had photographed a few hours earlier as part of the investigation in the complainant's case. The police showed M.H. the photo line-up from the complainant's case, and M.H. immediately identified appellant. The police began a search for appellant, and within a half-hour, they found appellant in a field approximately one and one-half blocks away from the Stop N Go.

*Kennamore v. State*, No. 01-01-00699-CR, slip op. at 2-5.

**III.   Claims**

Kennamore raises four claims in his § 2254 application:

1.     that extraneous offense evidence was improperly admitted at trial;

2.     that he was denied effective assistance of counsel at trial;

3.     that there was insufficient evidence to support his conviction; and

4.     that he was denied due process in that the trial court erred in denying a request for DNA testing.

Kennamore raised his ineffective assistance of counsel, insufficient evidence, and denial of due process claims in his state application for writ of habeas corpus. The Texas Court of Criminal Appeals, in denying Kennamore's state application, rejected each of these three claims of Kennamore on the merits. *See Ex Parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (denial of a state application for writ of habeas corpus denotes that Texas Court of Criminal Appeals addressed and rejected the merits of applicant's claims.). Kennamore raised his claim that

extraneous offense evidence was improperly admitted at trial in his direct appeal and in his petition

4

for discretionary review.

Respondent argues in his Motion for Summary Judgment that no relief is available to Kennamore on claims 1, 2, and 4 under § 2254(d) because the Texas Court of Criminal Appeals' adjudication of Kennamore's claims was not contrary to or an unreasonable application of clearly established Federal law as established by the Supreme Court of the United States nor was it based on unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  As for claim 3, Respondent maintains that such claim is procedurally barred from review.

## IV.   **Standard of Review**

### A.     **Merits Review under § 2254(d)**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited.  28 U.S.C. § 2254(d) provides:

> (d)   An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court]

5

cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 123 S. Ct. 1848, 1853 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)). A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. But "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applies [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'" *Price*, 123 S. Ct. at 1853 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S. Ct. 357 (2002)).

As for factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)(2) (2000). In addition, the state court's factual determinations carry a presumption of correctness; to rebut them, the petitioner must present clear and convincing evidence to the contrary. 28 U.S.C. §2254(e)(1) (2000)." *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd*, 124 S.Ct. 1652 (2004).

Of utmost significance under § 2254(d) is the principle that once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the

state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative.  In addition, the correctness of the state court's decision is not determinative.  As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous….The state court's application must have been 'objectively unreasonable.'"  (citations omitted).

**B.     Procedural Bar**

Federal courts are precluded from considering claims which were rejected by the last state court to have considered them on the basis of a state procedural default.  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989).  In order for a state court's rejection of a habeas claim to act as a procedural bar to review in a federal habeas proceeding, the state court must, in a plain statement, determine that its rejection of the claim rests on adequate and independent state procedural grounds.  *Harris*, 489 U.S. at 261; *Michigan v. Long*, 463 U.S. 1032, 1042 (1983).  Once a state court has relied on a procedural default for rejecting a habeas claim, a federal court in a federal habeas proceeding cannot review such a claim unless the petitioner shows cause and prejudice associated with the default or shows that absent a review of the claim by a federal court a fundamental miscarriage of justice will result.  *Coleman*, 501 U.S. at 750.  A fundamental miscarriage of justice occurs when a "'constitutional violation has probably resulted in the conviction of one who is  actually  innocent.'"  *Sawyer v. Whitley*,  945 F.2d  812,  816 (5th Cir.) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)), *cert. granted*, 502 U.S. 965 (1991), *and*

7

*aff'd*, 505 U.S. 333 (1992).

## V.    <u>Discussion</u>

### A. **Extraneous Offense Claim**

In his first claim, Kennamore complains that the trial court improperly allowed evidence of an extraneous offense at the trial.   Federal law is clear that, in reviewing writs of habeas corpus, federal courts are not to determine whether evidence was admissible under state law.   *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998), *cert. denied*, 526 U.S. 1118 (1999).   Federal courts are only to determine whether the admission of evidence violated the Constitution.   *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).   "An extraneous offense may be admitted into evidence without violating the due process clause if the government makes a 'strong showing that the defendant committed the offense' and if the extraneous offense is 'rationally connected with the offense charged.'"  *Story v. Collins*, 920 F.2d 1247, 1254 (5th Cir. 1991) (quoting *Enriquez v. Procunier*, 752 F.2d 111, 115 (5th Cir. 1984)).

In this case, the State made a strong showing that Kennamore committed the extraneous assault.   The state appellate court found the extraneous offense was rationally related to the present offense for the purpose of showing the appellant's identity.

The record supports the findings of the state appellate court with respect to proof of the commission of the extraneous offense and its rational relationship to the charged offense.   In addition, Kennamore has failed to show that but for the admission of this testimony the result in the trial would have been different.   *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).   No relief is available on this claim.

### B. Ineffective Assistance of Counsel Claim

In his second claim, Kennamore contends that he was denied effective assistance of counsel at trial. Kennamore claims that counsel should have filed a motion for DNA testing, should have more diligently pursued a lead that the attacker may have been another homeless man, should have objected that the description given by the complainant was inconsistent with the description given by one of the witnesses, and should have objected to the testimony of the complainant.

Ineffective assistance of counsel claims are generally measured by reference to the clearly established federal law set forth b y the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, to be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id*. At 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. At 687-89. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. At 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption

9

of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel.  The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record.  Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S.1220 (1984).  The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-91.  Counsel will not be judged ineffective only by hindsight.  "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1, 6 (2003); *Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 2456, 2462 (2005) ("hindsight is discounted").

Kennamore claims counsel was ineffective in his failure to file a motion for DNA testing. However, in the state court habeas proceeding, the trial court held that Kennamore had failed to show how trial counsel's actions with regard to DNA testing was deficient or how it had any negative

10

impact upon the outcome of the case. *Es parte Kennamore*, Application No. 57,259-01 at 35. Kennamore has not shown that this decision was objectively unreasonable.

Kennamore further claims that counsel was ineffective in its failure to diligently pursue a lead that the attacker might have been another homeless man. However, in the state court habeas proceeding, the trial court found that Kennamore had failed to explain what the lead was to this unnamed homeless man that he alleges was the attacker. *Id*. Furthermore, the court found that Kennamore had failed to show that there was any evidence that this was a credible lead that could have changed the outcome of the case in order to satisfy the second prong of the *Strickland* test.

Kennamore also complains that counsel was ineffective for failing to object at certain points during trial. Kennamore's complaints do not entitle him to any relief under *Strickland*. While there may have been some inconsistency between the physical description given by the victim to the police after the attack and the physical description of Kennamore given by one of the other witnesses, Kennamore's counsel questioned the victim about that inconsistency. (IV R.R. at 80-83). Kennamore claims that counsel should have objected to testimony of the complainant when she stated that she looked at him "so she could be sure to identify him later 'if she ever had to do so.'" Kennamore has not stated what particular objection should have been made or how such objection would have affected the outcome of the trial. Thus, under both *Strickland* and § 2254(d), no relief is available on this claim.

## C. Insufficient Evidence Claim

In his third claim, Kennamore contends that there was no evidence or insufficient evidence to support his conviction. According to Kennamore, the State's evidence was frivolous and void of

any meaning.

Kennamore raised this claim for the first time in his state application for writ of habeas corpus. The Respondent argues that Kennamore's sufficiency claim is procedurally barred because it was not raised by Kennamore in his direct appeal.

Here, there is no plain statement from the Texas Court of Criminal Appeals, in connection with its ruling on Kennamore's state application for writ of habeas corpus, that it rejected Smith's insufficient evidence claim on the basis of a state procedural default. As such, the procedural default doctrine under *Harris v. Reed*, 489 U.S. 255, 263 (1989), does not per se preclude review of Kennamore's insufficient evidence claim. *See also Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999) (where petitioner's state application for writ of habeas corpus was denied by the Texas Court of Criminal Appeals without order, there was no express reliance by the Texas Court of Criminal Appeals "on a procedural bar as the basis for disposing of the case" and thus the petitioner's sufficiency of the evidence claim was not procedurally barred in a federal habeas corpus proceeding). However, the Texas Court of Criminal Appeals has recently explained that its denial of state writs without written order does not always indicate that the writ was denied on the merits, and, where sufficiency of the evidence claims are at issue, such a denial is to be construed as a determination by the Texas Court of Criminal Appeals that the sufficiency claims are not cognizable in a state application for writ of habeas corpus. *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). In *Ex parte Grigsby* the Texas Court of Criminal Appeals wrote:

> In our jurisprudence, it is well established that a challenge to the sufficiency of the evidence used to sustain a felony conviction is not cognizable on an application for a post-conviction writ of habeas. As such, Applicant's first ground for relief is denied. In denying Applicant's attack on the sufficiency of the evidence, we take this opportunity to clarify our disposition of habeas corpus applications where an applicant

advances a challenge to the sufficiency of the evidence and we deny the application without written order.   In *Ex parte Torres*, addressing whether the applicant's subsequent petitions were barred under Article 11.07, Section 4, of the Texas Code of Criminal Procedure, we determined that "a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claims for reasons unrelated to the claim's merits."   However, we also held that "[a] disposition is related to the merits if it decides the merits *or makes a determination that the merits of the applicant's claims can never be decided*."   A challenge to the sufficiency of the evidence presents one of those instances where we can never consider the merits of the applicant's claim.   Therefore, today, we affirm our holding that where an applicant challenges the sufficiency of the evidence on an application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable.

*Grigsby*, 137 S.W.3d at 674 (emphasis in original)

In this case, given the Texas Court of Criminal Appeals' denial of Kennamore's application for a writ of habeas corpus, a denial which is construed as a determination that Kennamore's sufficiency of the evidence claim was not cognizable, *Grigsby*, 137 S.W.3d at 674, the Texas court's rejection of the sufficiency of the evidence claim rests on an adequate and independent procedural ground.   Because Kennamore has not shown cause and prejudice associated with his failure to raise the sufficiency of the evidence claim in his direct appeal, and has not made a showing of actual innocence, Kennamore's insufficient evidence claim is, consequently, procedurally barred from review herein.   *Caldwell v. Dretke*, 2005 WL 1962599 (S.D. Tex. 2005); *Moore v. Dretke*, 2005 WL 1773615 (S.D. Tex. 2005); *Havens v. Dretke*, 2005 WL 1150169 (N.D. Tex. 2005).

### D.  DNA Testing Claim

Kennamore, in his petition, alleges that four unknown hairs contained in the rape kit should

have been tested to determine whether the hair belonged to complainant or to Kennamore.  However, the trial court found (Document No. 21-2), based on testimony from trial, that it was unknown whether these hairs were recovered from the complainant's body or clothes or someplace else.  (V R.R. at 93, 99-112).  The court found that there was no indication that the unknown hairs contained in the sexual assault kit were recovered from an area of the complainant's body such that they could only be from her attacker.  In addition, the court found it entirely possible that the hairs did not belong to the complainant's attacker, particularly since Kennamore forced the complainant to lie naked on the ground at two different locations (outside an apartment building and then under some bushes), and since the complainant hid naked under a patio table for several minutes.  (Document No. 21-2).  The trial court, therefore, rejected Kennamore's request for DNA testing.  (Document No. 21-2).  Kennamore has not shown that the state court's rejection was objectively unreasonable.

## VI.    Conclusion and Order

Based on the foregoing, and the conclusion that Kennamore is either entitled to no relief in this proceeding under § 2254(d) or his claims are procedurally barred, the Court

ORDERS that Respondent's Motion for Summary Judgment (Document No. 21) is GRANTED, Petitioner's Federal Application for Writ of habeas Corpus (Document No. 4) is DENIED, and that this § 2254 proceeding is DISMISSED WITH PREJUDICE on the merits.  In addition, it is further

ORDERED that a Certificate of Appealability is DENIED.  A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard "includes showing that

reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Where the claims have been dismissed on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir.), *cert. denied*, 122 S.Ct. 329 (2001). When the claims have been dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Given the claims raised herein, as well as the rejection of Petitioner's claims by the Texas courts, the Court determines that reasonable jurists would not find the assessment of Petitioner's constitutional claims to be debatable or wrong and would not find debatable the correctness of the procedural rulings made herein. Therefore, Petitioner has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability will not issue.

Signed at Houston, Texas, this 1st day of August, 2008.

*Frances H. Stacy*

Frances H. Stacy
United States Magistrate Judge